Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the deputy commissioner, with some modification.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a pretrial agreement as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers Compensation Act.
2. At all relevant times herein, the employer-employee relationship existed between the named employee and the named employer.
3. The carrier on the risk for the employer is Reliance Insurance Company.
4. The employee sustained an injury to her neck and right arm on 4 January 98. Defendants deny that plaintiff sustained an injury to her low back at that time.
5. The injury with respect to the neck and right arm arose out of and in the course of the employment and is compensable. Defendants deny that any injury with respect to plaintiffs back arose out of and in the course of her employment, and also deny that it is compensable.
6. Stipulated into evidence in this case was a packet of records containing Industrial Commission forms and plaintiffs medical and physical therapy records. Defendants Form 19 Employers Report of Injury to Employee was introduced by plaintiff and admitted into evidence in the case.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On the date of the hearing before the deputy commissioner, plaintiff was a forty-two-year-old hair stylist. Plaintiff has a twelfth-grade education and was trained at a beauty college in Charlotte to be a cosmetologist. Plaintiff was self-employed for fifteen years as a hair stylist in Charlotte.
2. In November 1996, plaintiff moved to Winston-Salem, North Carolina. Plaintiff began working as a hair stylist for defendant-employer in December 1996.
3. By January 1998, between sixty and seventy percent of plaintiffs clients were "call-in clients, or clients with specific appointments, and the rest were walk-ins.
4. Plaintiff is not paid by an hourly rate, but instead receives fifty percent of the cash flow up to $600.00 that she generates per month. For any sums over $600.00 per month that plaintiff collects, she receives fifty-five percent. Prior to January 1998, plaintiff typically worked a schedule of six days one week and five days the next, at about seven to eight hours per day. Plaintiff earned approximately $700.00 per week in January 1998. Plaintiffs take home pay has increased since January 1998.
5. Plaintiff reported to work at noon on Sunday, 4 January 1998. The shop was to open that day at 12:30 p.m. When opening the shop, plaintiffs duties included retrieving and counting the petty cash. Due to recent robberies, the petty cash was kept under a hydraulic chair when the shop was closed.
6. The type of hydraulic chair used by defendant-employer is large and heavy, with a round steel base of about two feet in circumference. Although the hydraulic chair is meant to be pumped up and down instead of lifted, plaintiff had to lift the chair to get to the money. When she lifted the chair on 4 January 1998, plaintiff twisted her body, tilted the chair to her right, bent over, and blindly reached under the chair with her left hand to grab the bag of money.
7. When plaintiff grabbed the bag of money with her left hand, she immediately felt a sharp, stabbing pain in her low back that radiated up into her neck and down her right arm. Plaintiff immediately dropped the chair.
8. Prior to this incident, plaintiff had never experienced that sort of pain in her back or arm. However, she worked the entire day on 4 January 1998.
9. When Dplaintiff went home on 4 January 1998, she went straight to bed. At that time, plaintiff was experiencing pain in her low back and numbing and tingling in her right arm.
10. Plaintiff reported the incident by telephone to defendant-employers manager, Melody Meachum, the following day, which was plaintiffs day off. Plaintiff told Ms. Meachum that she felt as though she had done something to her back while lifting the hydraulic chair and that she had hurt her arm as well.
11. Plaintiff rested on 5 January 1998, her day off, then returned to work the following day. On Tuesday, 6 January 1998, plaintiff worked approximately five or six hours. However, she was in such pain that she cancelled her final appointment for the day and went to the emergency room at Baptist Hospital. During her visit to Baptist Hospital, plaintiffs primary complaints of pain involved her right arm, as her job required that she constantly hold her arms up to shampoo and cut hair.
12. X-rays taken at Baptist Hospital showed degenerative disc disease at C4-5, and plaintiff was diagnosed with a cervical strain. For several months plaintiff was treated primarily for severe neck and right arm pain.
13. On 12 January 1998, plaintiff was treated by Steve Lucey, M.D., an orthopedist at the Bowman Gray School of Medicine. Dr. Lucey prescribed pain medication and three days of bed rest for plaintiffs "severe neck strain. In the next few weeks, plaintiff was seen by a variety of medical care providers including: Dr. Lucey; the emergency room at Baptist Hospital; Prime Care; Jerome E. Jennings, M.D., who did not treat her, but recommended she be seen by a general medical doctor, and then referred to a neurosurgeon or orthopedic surgeon; and Salem Family Practice. At Salem Family Practice, plaintiff was treated by a physicians assistant who prescribed medication and physical therapy.
14. The 6 January 1998 medical record generated by Baptist Hospital indicated that plaintiffs chief complaint was "low back pain. Low back pain was plaintiffs chief complaint again on 26 January 1998, when she was treated at Prime Care. On 6 April 1998, plaintiff was seen by Sherrill D. Braswell, M.D., at Salem Family Practice for low back pain that radiated into her right buttock and which she had experienced intermittently since the incident of 4 January 1998.
15. From the date of the injury by accident on 4 January 1998 until early April 1998, plaintiff had low back pain, but her primary problems involved her cervical spine and right arm. However, by early April 1998, plaintiff began to complain of severe low back pain with radicular components. On 24 April 1998, an MRI of plaintiffs low back revealed that plaintiff had moderate to severe spinal stenosis at L4-5.
16. Dr. Braswell then referred plaintiff to William O. Bell, M.D., a neurosurgeon with Carolina Neurosurgical Associates. On 4 May 1998, Dr. Bell saw plaintiff and found that plaintiffs neck and right arm symptoms had improved, and that plaintiffs back and right leg were her greatest concern at that time. Dr. Bell recommended plaintiff undergo a bilateral decompression at L4-5 on 22 June 1998, but, as of the date of the hearing before the deputy commissioner, the surgery had not been performed because of defendants denial of plaintiffs back claim.
17. Prior to the incident of 4 January 1998, plaintiff had no history of problems with her low back, neck, or right arm that rendered her unable to work.
18. Following the incident on 4 January 1998, plaintiff missed less than seven days of work due to the injury. After the injury and continuing at least until the date of the hearing before the deputy commissioner, plaintiff worked split shifts. Plaintiff worked in the morning for several hours, then went home to rest for several hours due to pain. Plaintiff then returned to work and worked for several more hours. Plaintiff worked seven to eight hours over a twelve-hour period.
19. Medical notes corroborate plaintiffs testimony that she hurt her low back in addition to her neck and right arm when she lifted the hydraulic chair on 4 January 1998. However, because plaintiffs neck and right arm hurt more than her low back, it was not until several months later, when plaintiffs neck and right arm had improved, that plaintiff began to actively and consistently complain of low back pain and seek treatment for her low back complaint.
20. On 4 January 1998, plaintiffs preexisting, asymptomatic condition of spinal stenosis with mild spondylolisthesis in her low back was significantly aggravated when she lifted the hydraulic chair, and twisted and bent her body to reach under the chair to retrieve the petty cash.
21. After the Full Commission hearing on 16 December 1999, the parties stipulated that plaintiffs average weekly wage as of 4 January 1998 was $642.26.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 4 January 1998, plaintiff sustained a compensable injury by accident to her neck and right arm. G.S. 97-2(6).
2. On 4 January 1998, plaintiff sustained a compensable injury by accident to her low back when she materially aggravated an underlying, preexisting, but asymptomatic condition. G.S. 97-2(6).
3. Plaintiff has not missed sufficient time from work to be entitled to total disability compensation. G.S. 97-28, 97-29.
4. Plaintiff has not sustained a wage loss as a result of her compensable injuries. G.S. 97-30.
5. For her neck, right arm, and low back injuries, plaintiff is entitled to all medical treatment reasonably required to effect a cure, give relief, or lessen the period of disability, subject to the limitation of G.S. 97-25.1. This includes the surgery recommended by Dr. Bell. G.S. 97-2(19), 97-25.
***********
The foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall provide all reasonable and necessary medical compensation for treatment for plaintiffs neck, right arm, and low back as a result of her 4 January 1998 compensable injury by accident, including surgery, if still recommended by Dr. William Bell.
2. No attorneys fees are awarded for plaintiffs counsel at this time.
5. Defendants shall bear the costs.
 S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
S/___________________ BERNADINE S. BALLANCE COMMISSIONER